CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 09 2019

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | |
|---|---|
| **ANDREW V.,** | ) |
| | ) |
| **Plaintiff** | ) **Civil Action No. 5:18-CV-0055** |
| | ) |
| **v.** | ) |
| | ) |
| **ANDREW SAUL, Commissioner of** | ) |
| **Social Security,** | ) **By: Michael F. Urbanski** |
| | ) **Chief United States District Judge** |
| | ) |
| **Defendant** | ) |

**MEMORANDUM OPINION**

This social security disability appeal was referred to the Honorable Joel C. Hoppe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on July 29, 2019, recommending that plaintiff Andrew V.'s ("Andrew") motion for summary judgment be granted, the Commissioner's motion for summary judgment be denied, and the case be remanded for further administrative proceedings. The Commissioner of Social Security has filed objections to the report and this matter is now ripe for the court's consideration.

**I. Standard of Review of Magistrate Judge Decision**

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely

conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made.*'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

**II. Judicial Review of Social Security Determinations**

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## III. Analysis

### A. Evidence of Andrew's Impairments[2]

The evidence in this case shows that when Andrew works or attempts to work, he has extremely high levels of stress and anxiety that manifest in frequent (sometimes daily) bouts of vomiting and diarrhea, chronic nightmares, panic attacks, and thoughts of harming himself. When his symptoms were at their worst, he was described as depressed, anxious, angry, and with slowed motor skills. When he is not working, his symptoms abate.

Andrew alleged an onset date ("AOD") of January 11, 2013 and the record shows that he has not engaged in substantial gainful employment since that time. The ALJ found that he had severe mental impairments, namely affective disorder, anxiety disorder, autism spectrum disorder, and a learning disorder. R. 15, 17. In the ALJ's assessment of Andrew's disability claim, he did not cite any records generated prior to the AOD, which was when Andrew was working or attempting to work. The ALJ concluded that Andrew could perform a full range of work at all exertional levels but was limited to performing simple, routine, and repetitive tasks with little change in work structure or routine. He could have superficial contact with the public, occasional contact with coworkers and supervisors, and no work in teams or tandem. He was limited to low stress work with no high production quotas or fast-paced assembly lines. R. 19.

[2] Detailed facts about Andrew's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 14) and in the administrative transcript (ECF No. 9) and will not be repeated here.

## B. Weight Given to Medical Opinions

In general, an ALJ must accord more weight to the medical opinion of an examining source than to that of a nonexamining source. Testamark v. Berryhill, 736 Fed. Appx. 395, 387 (4th Cir. 2018) (citing 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) and Brown v. Comm'r of Soc. Sec. Admin., 873 F.3d 251, 268 (4th Cir. 2017)). Treating sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments. Id. (citing Woods v. Berryhill, 888 F.3d 686, 695 (2018)). "[T]he ALJ is required to give controlling weight to opinions proffered by a claimant's treating physician so long as the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record." Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (alterations and internal quotations omitted).[3] If an ALJ does not give controlling weight to the opinion of a treating source, the ALJ must consider a non-exclusive list of factors to determine the weight to be given all the medical opinions of record, including (1) examining relationship; (2) treatment relationship; (3) supportability of the source's opinion; (4) consistency of the opinion with the record; and (5) specialization of the source. Testamark, 736 Fed. Appx. at 398.

When the magistrate judge reviewed the ALJ's opinion, he found that she erred because she did not adequately explain why she gave only partial weight to the opinion of Andrew's treating psychiatrist, Thomas M. Jayne, M.D., and gave great weight to the opinion of a

[3] The Social Security Administration has amended the treating source rule effective March 27, 2017, for cases filed after that date. Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency. 20 C.F.R. § 404.1520c(a), (c)(1)-(2). Because this case was filed before the effective date of the change, the decision is reviewed under the regulation in effect at that time, 20 C.F.R. § 404.1527.

consultative examiner, Joseph J. Cianciolo, PhD, who examined Andrew only one time. Dr. Jayne, who had treated Andrew since January 2011, during the years he was trying to work, completed a mental RFC questionnaire in July 2015. Dr. Jayne opined that Andrew would be unable to meet competitive standards in the areas of completing a normal workweek without interruption from psychologically based symptoms, in accepting instructions and responding appropriately to criticism from supervisors, in dealing with normal work stress, and in dealing with the stress of semiskilled and skilled work. R. 598-599. Dr. Jayne also found that Andrew had a low IQ and reduced intellectual functioning, would be absent from work approximately four days per month, and was not a malingerer. R. 599-600. He commented that Andrew had difficulty with peer and supervisor interactions, was unable to keep work pace, became very anxious and had physical symptoms that made him avoid or leave work, and that the symptoms had happened in multiple work settings. R. 598. Dr. Jayne further commented that Andrew had stress intolerance, would panic during routine work conditions, was unable to tolerate negative feedback from his supervisors and had a slow work pace. R. 600. In 2016 Dr. Jayne indicated that his assessment of Andrew had not changed. R. 595.

The ALJ gave Dr. Jayne's opinion only partial weight, finding that his opinions on absences and Andrew's inability to tolerate stress were not substantiated by the medical evidence in the record, including Dr. Jayne's own treatment notes. However, as mentioned above, the ALJ did not discuss any of Dr. Jayne's treatment notes made prior to January 2013, when Andrew was working and when his worst symptoms manifested.

Dr. Cianciolo, the examining psychologist, examined Andrew for thirty-five to forty minutes on December 7, 2016. He found that Andrew had the intellectual capability to

perform simple and repetitive tasks as well as detailed and complex tasks. He had a mildly impaired ability to maintain regular attendance in the workplace, perform work activities on a consistent basis, and complete a normal workday or workweek without interruption. It did not appear likely that he would require additional supervision within the workplace and he appeared capable of accepting instruction from supervisors. He had a mildly impaired ability to interact with coworkers and the public and to cope with routine stressors encountered in competitive work. R. 611-615, 623. The ALJ gave Dr. Cianciolo's opinion great weight, finding it consistent with his examination and other evidence of record, including treatment notes and mental status examinations. R. 22.

The magistrate judge found that the ALJ's RFC analysis was flawed because she did not consider records from the period before Andrew stopped working. The magistrate judge further found that because Andrew alleged and Dr. Jayne opined that that his debilitating anxiety symptoms were triggered specifically by working, the ALJ should have explained why she discounted evidence from Andrew's treatment records during the time he was working or applying for jobs. Because she did not do so, the magistrate judge found that substantial evidence did not support the ALJ's decision to give the consultative examiner's opinion more weight than she gave to the treating physician's opinion. Thus, he concluded that substantial evidence did not support the ALJ's determination and recommended that the case be remanded for further consideration of the evidence.

**C. The Commissioner's Objections**

The Commissioner objects to the recommendation to remand, contending that the magistrate judge "mistakenly recommends remand on the ground that Plaintiff's treatment

records prior to the period before he stopped working are outcome-determinative." ECF No. 16 at 1. However, rather than making a mistake, the magistrate judge was acting in accordance with Fourth Circuit law by recommending that the entire record, including medical records from the time Andrew was working and attempting to work, be considered. When determining a claimant's RFC, the decision-maker must evaluate all relevant record evidence. Patterson v. Commissioner of Social Security Administration, 846 F.3d 656 (4th Cir. 2017). The RFC evaluation is "holistic" and "fact-specific." Id. at 659 (citing 20 C.F.R. § 404.1520(e)); Testamark, 736 Fed. App'x at 399. See also Lewis, 858 F.3d at 869 ("'An ALJ has the obligation to consider *all relevant medical evidence* and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.'") (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)) (emphasis added). Accordingly, the Commissioner's objection is **OVERRULED**.

The Commissioner points out that two days before his AOD, Andrew told Dr. Jayne that he was not depressed and it was the "best he has felt." R. 479. However, Andrew had been laid off from his seasonal job and the fact that he felt better is not inconsistent with his allegations of disabling anxiety and depression triggered by work stress. To the extent the Commissioner is basing an objection on this evidence, it is **OVERRULED**.

The Commissioner also argues that it was appropriate for the ALJ to only look at medical records from December 2013 and going forward, because 20 C.F.R. §§ 404.1512(b)(1)(ii) and 416.912(b)(1)(ii) only require that the agency develop a complete medical history for twelve months preceding the month in which the application is filed, which in Andrew's case was January 2015. However, the Commissioner misreads the regulations,

which state, "Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary. . . ." Thus, the twelve-month look-back at medical evidence is a starting point for, rather than a limit on, the evidence that should be considered.

Courts routinely find that ALJs should consider evidence that predates a claimant's AOD. See e.g., Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) (holding that ALJ erred when he failed to consider evidence that predated claimant's AOD); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005) (finding there was no valid reason to exclude consideration of medical records dated prior to claimant's AOD); Treadwell v. Colvin, No. 5:13-CV-370, 2014 WL 4656852, *10 (E.D.N.C. 2014) ("Where evidence predating the onset of disability is relevant to an issue in the case, the ALJ should consider that evidence in making a determination on the issue."); and Corcoran v. Astrue, No. SKG-08-913, 2009 WL 3100350 (D. Md. 2009) (noting that other circuit courts "have explicitly held that the ALJ may, and sometimes must, consider medical evidence which predates the alleged onset of disability" and collecting cases.)

The court finds that the magistrate judge's conclusion that it was error for the ALJ to not consider the evidence of Andrew's mental impairments from the period prior to his AOD is correct. The Commissioner's objection to this conclusion is **OVERRULED**.

Finally, the Commissioner argues that the pre-onset treatment notes do not dispel the ALJ's conclusion that a young, active person, responsive to treatment, can make adjustments to work in the national economy when the work is limited to accommodate his non-exertional

impairments. While that may be true, the court's role is limited to deciding whether substantial evidence supports the ALJ's conclusion regarding Andrew's impairments. Because it is clear that the ALJ did not consider all the relevant evidence, his determination is not supported by substantial evidence and this case must be remanded so that the evidence may be considered.

## CONCLUSION

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ's decision is not supported by substantial evidence. As such, the Commissioner's objections are **OVERRULED**, the magistrate judge's report and recommendation will be adopted in its entirety, and this case will be remanded to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g).

An appropriate Order will be entered.

Entered: 09/09/2019

Michael F. Urbanski
Chief United States District Judge